The Lake Paiute National Park is a national park located in the Paiute Valley, North Carolina.  Before we begin, we don't usually have four people on one side, so I don't think you're going to have any problem allocating your time. But would you just explain to me, you have 20 minutes, four people, what your plan is before we begin? Good morning, Your Honor. Michael Walsh. I believe the understanding of counsel is that I will proceed first and take approximately 8 minutes. The remaining 12 minutes will then be divided between the other counsel. Like around 4 minutes per person. All right. Great. You may begin. Good morning, and may it please the Court. I'm Robert Pelsiger, attorney for the Pyramid Lake Paiute Tribe. I'd like to reserve 5 minutes for rebuttal. Well, here we are again. We've been here since about 1900. The good news this time is that the vast majority of the Newlands Project transfer applications were resolved following this Court's decisions in Alpine 5 and Alpine 6, decided in 2002 and 2003 respectively. Most of them were settled through the AB 380 program that was enacted by the Nevada legislature in 1999. The bad news, however, is that we are not back to decide new questions of law. Rather, all of the legal issues raised by the proposed transfers of Newlands Project water rights that are before this Court, all of those legal issues were resolved by this Court in its five previous decisions in this case, Alpine 2, Alpine 3, Ore Ditch, Alpine 5, and Alpine 6. We are here because a relative handful of transfer applicants decided not to participate in the AB 380 program. The state engineer declined to follow the law of this case in his rulings in favor of the transfer applicants, and the district court, per Judge Jones, affirmed those rulings of the state engineer. This was precisely the situation that this Court sought to prevent. In its most recent decision, Alpine 6, this Court noted the long and contentious nature of this litigation. Because of that, this Court continued, we set forth the type of findings that the state engineer must include in his ruling with respect to each application in order to permit the district court to affirm on the basis of the state engineer's ruling. Unfortunately, the state engineer and the district court did not follow the law of this case in several ways. First, they did not apply the requirement of an attempted thwarted transfer of the challenged water rights or an inquiry concerning a transfer. Second, they continued to approve transfers based on the landowner's defense of detrimental reliance, which this Court explicitly rejected three times in Alpine 2, Alpine 5, and Alpine 6. Third, they did not apply the requirement that the attempted transfer or inquiry must be coincident with the period of non-use. Fourth, they approved transfers of water rights from dirt line ditches without making the required findings regarding the extent to which the water conveyed through those ditches was put to actual beneficial use. And fifth, they reaffirmed the approval of one application, number 53910, the one that's being defended by the government, which was based on insufficient findings and without reexamining the flawed evidence in light of this Court's previous admonitions in the Oreditch case concerning the state engineer's improper application of the clear and convincing evidentiary standard. First, with regard to the necessity of an attempted transfer or inquiry, in its remand instructions in the conclusion section of Alpine 6, this Court stated, quote, with respect to contracts after 1913, that is, with regard to the forfeiture issue, on remand the district court or the state engineer shall determine whether the tribe has shown non-use by clear and convincing evidence, and if so, whether the applicant took steps to transfer rights during the period of non-use but was thwarted by the government or by TCID in his or her efforts. You're talking about forfeiture in this? That paragraph or remand instruction specifically regarding forfeiture. Thank you. And abandonment is the same, which I'm getting to. All right. All right. Well, the same for this purpose. This Court continued in its remand instructions, quote, when determining whether the applicant abandoned his or her water rights, on remand the district court or the state engineer must determine if the applicant made continuous use of the water right and attempted unsuccessfully to file for a change in the place of use or at least inquired about the possibility of a transfer and was told by the government or TCID that such a transfer was not permitted. These instructions could not be more clear. Once the tribe establishes non-use, the transfer applicants must show that they attempted to file for a change in the place of use of their water rights or at least made an inquiry and were thwarted. But that is not what the state engineer did. Here are two examples. In Ruling 5464H, regarding applicants. Let me interrupt you for a minute. The contention on the other side is that it's not a presumption that you've abandoned it because you don't use it. The way you stated it just now, it seems to be a presumption. Your Honor, that's the argument that the same argument that they made in Alpine 6 for this Court, because the requirement for the attempted transfer or inquiry first was announced by this Court in Alpine 5. And in Alpine 6, which came back to this Court, the state engineer and the applicants made exactly that same argument. And this Court considered and rejected that argument in Alpine 6 after it was made. Do you think there is a presumption? I didn't say there was a presumption. I'm saying there is. Well, what do you think it is, if not a presumption, the way you're presenting it? Well, it's a requirement of what must be shown. Well, I would say you're arguing a presumption. Well, I'd like to go through the law of property on this, because this case is encrusted with precedent, precedent, precedent. But to start on basics, the water right is a property right, is it not? Yes. And if an owner is going to abandon his property, who has the burden of proof to show abandonment? The party claiming abandonment must show the burden of proof with clear and convincing evidence, as this Court held in Nordich. So the claimant of the abandoned property has the burden of proof and persuasion to show by clear and convincing evidence that the owner has done that. Yes. And then there's no presumption from nonuse that he's done it. Yes, Your Honor. I think to understand this Court's holding, again, which was first made in Alpine 6 and was reaffirmed, I'm sorry, Alpine 5, and was reaffirmed in Alpine 6, the Court's determination of that issue was predicated specifically on its rejection of the detrimental reliance defense. And specifically, this Court said, in connection with detrimental reliance, that if the transfer applicants moved water within their farm without complying with state transfer requirements, they did so at their own risk under Alpine 2. Since the Reclamation Act made it clear that state law applied to these actions, the fact that the United States knew or should have known that those transfers had taken place is irrelevant under Alpine 2, which specifically held that informal transfers were not exempt from Nevada law. So what this Court ---- Let me interrupt you a minute. How is all this talk about detrimental reliance relevant to the question of what has to be proved? Because it was the rejection of detrimental reliance, and it was the holding that the law required the filing of a transfer application that led this Court to impose that requirement in the unique circumstances of this case in order to show lack of intent to abandon, or in order to ---- Why does the owner have to show lack of intent? The burden is on the claimant. Well, because the owner has that information of ---- Now, wait a minute. But the claimant is trying to prove his abandonment. The burden is on the claimant, not on the owner. Well, it's not the question of the burden of proof we're talking here about. Why isn't it? Because it's a question of who ---- what the Court said is that who has the obligation to come forward with evidence of not ---- Well, the burden of proof is on the claimant. The owner owns the property. Somebody's got to show he doesn't own it. I don't see at any point why he has the burden. Well, first of all, I would say the dispute is with Alpine 5 and with Alpine 6. Well, I'm talking about property law in general. I'm not going to be cabined by this ---- The burden of proof is on the party claiming forfeiture or abandonment. But this Court has held unmistakably that the ---- once the tribe shows nonuse, the applicant for the transfer must show, because the applicant is the one that has the information that he or she or his predecessors sought, attempted to transfer or at least made an inquiry and was thwarted in that process. Well, that seems to me clearly contrary to Nevada law, which says there is no presumption to be drawn from nonuse. And that is precisely the argument that was made by the State engineer and the transfer applicants. Well, you're arguing for this Court, not some other Court. That's correct. But this Court is bound by the precedents in Alpine 5 and Alpine 6. And for it to be reversed requires, my understanding, an en banc panel. Let me just shift slightly on the property question to something that I think you mentioned. And that has to do ---- well, you say your client seeking abandonment has the burden of proof. Yes. But once nonuse is established, then they have to show some other indicia. Yes. If that's true, as I read your briefs, you're saying that you can't, for that other indicia, use efforts to transfer or other efforts that might fall outside of that period of nonuse. Am I correct? Yes. Okay. So I understand ---- Excuse me. The initial period, the initial five-year period of nonuse. Correct. And I can tell you how that's derived. Well, that gets into the specific application. So if we take that, walk down that path, I understand that argument with respect to forfeiture. But I'm having some trouble in reading our precedent to say that you couldn't use as some indicia, not necessarily dispositive, transfer efforts outside that period. Because as I read our precedent, it doesn't restrict you to the use period for abandonment in the same way it would for forfeiture. So I'd appreciate your comments on that. Well, what I would point to, Your Honor, is that the relevant ---- the most relevant portion of this Court's opinions that addresses that subject is Alpine 5, where this Court said that the attempted transfers or inquiries did not occur within the period coincident with nonuse. Okay. So let me ---- can I just stop there? Because I read that, all right? Yes. And then I might ---- one might conclude, as you do, well, that means you have to stay within the nonuse period. But here is my question. As I read that, the Court was trying to, in effect, explain why these blanket situations, the blanket equitable relief, which we've now said is not available, why that was not available. And it was not really talking about what you could or could not show for purposes of abandonment, as I read it. If you go back and look at the State engineer's decisions regarding those four transfer applications, six different parcels, you'll find that they concerned both forfeiture and abandonment. In fact, if they consider forfeiture, they have to consider abandonment, because abandonment applies before or after 1913. Forfeiture only applies with contracts after 1913. And so when this Court said that the period of nonuse was not coincident or the attempted transfer was not coincident with the period of nonuse, if you go back and read the And here's the key point. The key point is that what's important with regard to abandonment, as this Court stressed in Alpine 5, is the question of intent. And what matters is the intent during the period of nonuse. And if you look outside the period of nonuse, in order to determine this issue of intent, you're basically saying that the water right was subject to forfeiture or abandonment based on what occurred during the initial five-year period, but that intent was cured by a subsequent attempted transfer. And this Court rejected that. How about previous? It's nice to say subsequent, and I understand that. But how about previous? So in 1971, the person goes to the government and says, may I transfer this? Here's what I want to do. And they say, no, we're not permitting that. And then he doesn't ask for the next five years. Is your position he has to ask every five years for abandonment? I'm talking about forfeiture. Yes. So every five years he's got to go back and ask again. He can't say, well, they told me they won't do it, and I can't see that anything's changed. Well, you're saying our cases say you can't do it previously. I'd like to emphasize subsequent, and that makes some sense.  Previous? Well, this Court said it must be coincident with the period of nonuse. Before the period of nonuse is not coincident. In fact, a better argument could be made that after the initial period of nonuse, it could still be coincident with the period of nonuse, but before is not coincident. But this Court has also said that if you pay your taxes and assessments and don't have an antithetical use, that's enough to show lack of intent. We said that. That's correct. And that, again, was the argument that the State engineer and the transfer applicants made in Alpine 6, saying that the requirement for an attempted transfer was inconsistent with the previous decision, which had indicated that payment of taxes and assessments was sufficient. Again, this Court rejected that position and insisted on the necessity of showing It may look like that in the conclusion, but it certainly didn't reject it in the discussion. Well, it did. Again, if you look at the point, and I think it's on pages 916 to 918, in the middle of the decision, because that's where the Court addressed the question of the apparent tension or inconsistency between Alpine 5 and Orgich. And it was precisely, Your Honor, with regard to the issue that you just mentioned. And the Court came down on saying, no, the insistence on an attempted or thwarted transfer is the right result. I understand your point. Thank you. I'll reserve the rest of my time. Reserve your time. Thank you. Mr. Walz. May it please the Court, I'm Michael Walz, Senior Deputy Attorney General for the State Engineer, Tracy Taylor, and as noted, I'm reserving 12 minutes of time for the argument of co-counsel. Is this your full-time job? Are you the water person? Yes, I am. I didn't think it would be like more than a full-time job. There are two of us doing it. Okay. All day, every day. Let me ask you one question. How large is the staff of the State Engineer? I'm ashamed to say I do not know. I know it's fewer than 200 people. Well, you must have some impression if you're representing them. Well, I should, but I don't recall. Do you have any idea how big the office is? Physically, yes. I'm there several times a week, and they also have an office in Las Vegas. Do they have 10 people, 20? Oh, it's somewhere between 100 and 200, Your Honor. I don't think I have any sense about how much of an operation this is. I would think you're the lawyer, you ought to know something about your client. I deal with the same three people a lot. You deal with what? I deal with the same three people a lot and don't deal with many of the staff attorneys. In regards to abandonment, the tribe's interpretation of the Alpine 6 decision cannot be accepted for two reasons. First, the tribe's interpretation is inconsistent with controlling principles of Nevada law, and second, it requires this court to ignore the holding of the Ordich decision and leads to an interpretation of Alpine 6 that is internally inconsistent. Abandonment is the voluntarily and intentional relinquishment of a right. It's a question of fact to be determined from all of the circumstances, and the tribe clearly has a burden of showing the intent to abandon by clear and convincing evidence. I think on that, so far, I think you both agree to that point. And this is where we diverge. In the Ordich decision, this court stated, non-use can provide some evidence of intent, but it is not by itself sufficient to establish abandonment. And this court has repeated its holding numerous times that non-use alone does not create a rebuttable presumption of abandonment. As a consequence, it is the applicant's obligation to show that there was not only an extended period of non-use, but that there were some other facts indicating an intent to abandon. The obligation on the part of the applicants to then come forward with evidence only arises once the tribe has met that initial burden. That is the only reasonable interpretation of the Alpine 6 decision. This court has endorsed the holding of the Alpine 4 decision on three different occasions. In that decision, the district court said, if, however, there is only evidence of non-use combined with a finding of a payment of taxes or assessments, the court concludes that the tribe has failed to provide clear and convincing evidence of abandonment. The Ordich court expressly endorsed that statement of the law. The Alpine 5 court similarly said, as a formulation of the law, we explicitly endorse this statement. And then in Alpine 6, this court stated that it sets forth the guiding principles that courts are to apply, not were to apply, but are to apply when confronted with a claim of abandonment. There is nothing in the Alpine 6 decision that would indicate that this court intended to overrule that holding. Similarly, in Alpine 6, this court stated, read together, however, we view the cases as requiring proof of continuous use in the absence of other evidence of lack of intent to abandon, such as payment of taxes or assessments. When such proof does exist, then proof of continuous use is not necessarily compelled. Well, counsel, let me ask you one question. These cases that have come up look, generally speaking, to fit into the patterns of the other cases. One thing is added in at least one of these cases. The engineer said, well, if you made a sale, that demonstrates no intent to abandon. And what I'm unclear on, the state engineer believed that, for example, let's say you didn't use the property for the water for 20 years. None of the other standards that we've set out. But then 20 years, after 20 years of nonuse, you make a sale. The state engineer is saying that's good enough? I don't believe that those are the facts that we have in front of us, Your Honor. Ask me about the facts. I'm asking you a question of asymptotes, not points. As a hypothetical, I think that's difficult. These are to be determined on a case-by-case basis. One could look at those particular facts and say that there had perhaps been an intent to abandon at one point, and then acts taken later. So the engineer is not saying a sale any time, after any amount of time, is good enough? No, I don't believe that the engineer ever intended to make such a broad statement. He looked specifically at the facts. And an example here, I believe, would be application 49999, where there was evidence of some active efforts during the period of nonuse, which I believe was six years, to market and sell the property, which would evidence in that case evidences that there was no intent to abandon. They knew they had the water right. They maintained control over the water right and took moves, took steps to sell that water right. You know, your brief refers to all of that evidence, but we haven't seen the evidence, and I don't believe your brief gave us a reference to where the evidence of all these attempts during the period is located. I believe my brief refers to the state engineer's ruling, and you're correct.  And he doesn't talk about all those intents. He just says they made a sale. Well, I'm not sure if counsel for that particular application is here. I will defer to them to address those facts. Okay. Returning to abandonment for one moment, in order to accept the tribe's argument, its interpretation of Alpine 6, it is necessary to assume that this court overruled itself within its own ruling, within Alpine 6 itself, stating the rule in regard to abandonment and the burden of proof and then turning around in the conclusion and overruling that without explicitly saying so. The tribe never explains what happens with this court's repeated reference to the burden of proof. It merely states that in Alpine 6 something else happened. One of the key differences, I think, in your positions has to do with what evidence, prior evidence, might be admissible. And he said, no, everything has to be within the period, otherwise it's not relevant in effect. What's your position on that? The language referred to by the tribe deals specifically with forfeiture. And as this court is aware, forfeiture is five years of nonuse, you lose your water right, intent is not an issue. And there are a number of doctrines, such as equity and cure, that then apply to forfeiture. Abandonment is a question of intent. And as a consequence, it's fundamentally different. Specifically, this court said in regard to abandonment in the Alpine 5 decision, that if the landowners attempted to transfer prior to the filing of their applications and were thwarted, it most likely demonstrated a lack of intent. That's at 1077. So this court has addressed specifically that question as it applies to the doctrine of abandonment and did not find that that narrow, coincident five-year period was relevant. And, of course ‑‑ So if you ‑‑ but if you do something after the period, you would agree that would be a different situation. It could be. It also could still be relevant in a combination with other facts of showing the intent of the person involved. I believe that most of the facts relevant here, the inquiries were made prior to the period. Right. Well, we have some of these parcels where that's not the case or some of these applications where that's not the case. I would believe it would be the position of the state engineer that you would have to, again, look at the facts as a whole to determine what the underlying intent was. But clearly, in following the court's instructions, the state engineer looked specifically to the language of Alpine 5 and took that literally and stated that the relevant period of time was whether an inquiry was made prior to the filing of the applications. And if there are no further questions, I will cede the remainder of time to counsel. Thank you. Thank you. May it please the Court, William Lazarus representing the United States on Application 53910. The issue presented to the United States concerns only the threshold question of non-use of the existing place of use, that is, whether the state engineer abused his discretion in determining as a matter of fact that the tribe did not establish by clear and convincing evidence that the water rights pertinent to Parcels 1 and 2 in Application 53910 were forfeited or abandoned. The Court may know that those water rights were acquired by the United States from the 53910 applicants for transfer by the Fish and Wildlife Service for wetlands maintenance and restoration in the Stillwater National Wildlife Refuge. The tribe did not object to that transfer by the government, and the state engineer approved that transfer, but the tribe had previously objected to Application 53910. The tribe's brief complains about the quality of the aerial photographs provided by the applicants as rebuttal evidence to the tribe's objection, but the tribe had the burden of proving forfeiture or abandonment by clear and convincing evidence. And the only evidence presented by the tribe as to non-use of the water rights that they complain about in their brief, which is the water rights from 1983 to 1989, are aerial photographs from those years. But if the court looks at those photos, which are reproduced at the tribe's excerpts of records, page 51 to 54, the court can see that those photos are of very poor quality. And, indeed, the hearing end transcript at pages 9 to 11 of the United States supplemental excerpts of records show that the tribe's witness was questioned by the hearing officer as to how he could conclude from those photos that Parcels 1 and 2 had not been irrigated, and he simply responded with that reference to any particular five-year period, I don't believe it's been irrigated, it doesn't appear to be irrigated. And the court, the tribe focusing on 1983 to 1989 is undercut by looking at the transcript of those photographs and photos as to those provided by the tribe, and what you see is that there is scant photographic evidence, even as to those years for supposed non-use for Parcels 1 and 2 for any continuous period. Page 51 of the tribe's excerpt shows 1985, that shows only part of Parcel 2. Page 52 shows 1986, that doesn't show any of Parcels 1 or 2. There's no photo for 1987. For 1988 on page 53, that shows only parts of 1 and 2. The only photo in the tribe's excerpts of record for those periods that was submitted is for 1989, that's the only year that shows the entirety of Parcels 1 and 2. That's not a five-year period. So the question is whether the State Engineer posed more than a clear and convincing evidence burden, and your position would be no. Absolutely not. The tribe's evidence falls flat on its own face, and we would simply ask the court to review that. The tribe tries to divert attention from the failure of its own proof by complaining that the aerial photos and the applicant's rebuttal evidence was poor, and that on remand the State Engineer reaffirmed his ruling as to Application 53910. In our view, the court need look no further than the tribe's own evidence to see that there was no abuse of discretion by the State Engineer in determining the lack of clear and convincing evidence. Thank you. May it please the Court. I'm Laura Schroeder, and I represent three applicants, the Rambling River Ranches family. Can you just slow down, because we've got to get these Rambling Rivers, that's 008. It's 50008, correct. And then I also represent the Sticks family, which is 51043, and also the Wolf family, which is Application 51237. With me today in the courtroom is Norm and Sue Frey. George, age 80, is home on the ranch. The Sticks is not here, and also Mr. Wolf and his family, Dan and Julie, are here as well. So we appreciate the opportunity to come here. They are here because they believe in the U.S. system of government and the judiciary, looking at these transfers and treating them equally with other citizens. It is not true that they are the only ones left, as Mr. Pelsiger suggested, because behind this case is another case called the Petition Case, and the tribes filed 2,200 cancellations against water users within the Newlands Project. So what you are to decide here is very significant in an ongoing issue, and we believe that it's important, my clients especially, that this history and the development of the Newlands Project water right be included. In the State Engineer's decision, the State Engineer specifically included the history of the ability of transferees or water users within the Newlands Project to transfer water. The Court, they did not adopt it or make their findings conditioned on it, but we believe and assert that that history is critical to your understanding, the Court's understanding, of what was available to the water users. Could I ask a question? Go ahead. As I understand it, this is Parcel 2 and Parcels 8 and 9 of your client, that there was 38 years of nonuse. Is that correct? Your Honor, are you talking about 50,008, I believe? I'm sorry. Yes. 50,008, Mr. Frey, Rambling River Ranches application? I don't know. Yes, I think those are the ones, because those are 2, 8, and 9. I don't know what I mean when I say since 1950 there wasn't water use. Right. There's 3 applications and they have 4. And now the only evidence that I understand your offering is that your client attempted to get water rights. What else did he do? In 50,008, the tribe doesn't challenge anything but our attempts to transfer. There is evidence in the record as to the attempts in those. Could you go a little slower? What happened in 58? In 50,008, the transfer exhibit 1636 in the state engineer hearings, that's the affidavit of George Frey, talks about his attempt to transfer. And did the state engineer find that? Yes, this was in the record. And what was the date on the attempt to transfer? I didn't write that in my notes, Your Honor. But I guess the question is, was it in the first 5 years? What was the period? The first note that I have in my record is 1948, that he attempted. Mr. George Frey went to TCID in 1948. And that's in the transcript that the court asked us to submit. You requested additional information and we provided that. And that's in those transcript pages. I think what we're looking for, did the state engineer actually find particular dates when there was at least an inquiry about the right to transfer? Well, the state engineer's decision does not include actual dates. But the testimony and transcript does. It did not include them. It did not include actual dates, but the testimony does. We're somewhat controlled by the findings. If he didn't make them, how can we sustain it? Well, because in the footnote to the state engineer's decision, it refers to the pages in the transcript that your court asked for, and that's where the evidence is. So it is in the state engineer's decision by referencing to the transcript. So you're saying that that's incorporated, and when we're looking at our standard of review, we look through to those transcript pages? Right. I think you should. And you've asked for them, so they're in your record before you. Now, be sure to understand that as to my three families, only one of those families is subject to forfeiture. The other two only abandonment issues. And so the dates, if you're going to talk about dates, the only dates that would be relevant in our opinion, even if you went with what the Indians are suggesting, would be those forfeiture dates for Mr. Frey. And as you have requested that testimony, you have it before you. Could you jump to the wolf claim? Yes, certainly. And talk about the ditch and whether that's an inconsistent use, because that's a fairly specific finding, and we have awe on that topic. Yes. Well, the state engineer found that the tribe failed to provide clear and convincing evidence of where that ditch was. Everyone agreed that there was a ditch, but no one knew how big it was, where it was, and how many acreage. So they failed by clear and convincing evidence to show the non-use, because they failed to show where it was. So while we produced all the evidence on the other areas, that's where the state engineer found on that decision. In other words, nobody knows where the ditch is, or they know but it's not in the record? No, the tribe did not. Everybody knew the ditch was there, but they did not clearly and convincingly describe for the state engineer accurately the extent of the ditch. It was on aerial photographs. You could see it. That was their evidence. But in order to do a transfer, you're talking about precise tenths and hundreds of acres, and there was no description by the tribe as to what part of that acreage was on the drain ditch. And therefore, it failed to meet the clear and convincing standard. And what about the transfer effort? For the Wolffs? Yes. Okay. Now, the Wolffs are only subject to abandonment. Abandonment. Yeah. So abandonment for the Wolffs, the transcript, which was also submitted to the U.S. District Court here on the Ninth Circuit, from the U.S. District Court, was transcript pages 6808 to 6827 and 6834 to 36. And Mr. Wolff, not Dan, but his father, requested that transfer to TCID, and that was done when he was attempting to realign his property so that he could parcel off a piece of property to his daughter. And so he didn't move that water off that property. He inquired before he moved the water off. So it would have been prior to the he would have been thwarted from that attempt before he moved the water, if that's your question. But I don't believe that he has to. I guess the thwarted was a contested issue, correct? The tribe has made it a contested issue here. Yes. Thwarted meaning whether it was contested by. I thought the pyramid contested whether it was actually thwarted in some factual way. Yes. The tribe has generally argued that the evidence submitted to the State Engineer wasn't precise enough because we had to show an actual application or we had to show some sort of piece of paper or other evidence that we did a transfer. But remember, Your Honors, that these were done by contracts before 1980, and these were contract forms of water rights. Through the Reclamation Department and TCID, these were not water rights in the State Engineer's office. So there were no maps that ever went with these water rights. So what then is the documentation on the transfer? There is none because at that point. Other than is there testimony, though? Yes, there's testimony. The only way that a person could in those days change things was to go to TCID itself and ask for them to change the contract. And at that point, TCID was unable to do that because the Reclamation told them they could not make changes to those contracts. Thank you. Thank you. May it please the Court. I am Attorney Nathan Metcalf representing Appellees DeBraga, which is Application 51608. Hang on. All right. Workman, Application 49999. Harriman, Application 51051. And Ingalls, Application 52843. I'd like to point out that there are specific findings in the record that were made by the State Engineer in regards to abandonment and dirt line ditches, and I believe I'm the only, the people I represent are the only dirt line ditch issues here, that were upheld by the district court and should not be disturbed by this Court on appeal. There's also substantial evidence in the record to support the State Engineer's determination, and the tribe has provided no clear and contradictory evidence to the contrary. Further, as we've established, it's the tribe's burden to prove abandonment by clear and convincing evidence. I think since I am the only dirt line ditch person, I think I'll start with the dirt line ditch issue. This Court in Alpine 6 rejected a blanket beneficial use determination of dirt line ditches and remanded to the State Engineer for individual findings of beneficial use in regards to the water and dirt line ditches. The State Engineer found not only a beneficial use, but also that that use was consistent with irrigation. There's testimony in the record for applicants, both Ingalls and Harriman, that at the end of each irrigation season, they allowed their cattle to go out into these ditches where native grasses and forage grew as a result of the water in a ditch for the specific purpose of allowing the cattle to forage. And could you just tell me again the numbers of the dirt line ditch applications? Yes. Ingalls, 52843, and Harriman, 51051. Thank you. In addition, there was specific testimony and evidence of a direct effect on the plants, and both of these applicants planted on the sides of the ditches, that the plants grow faster and keep greener as a result of seepage from the ditch. The tribe claims that the State Engineer erred because he failed to quantify the amount of water that's necessary for this beneficial use. However, this issue was not presented at the administrative level. It was not a protest point raised by the tribe, and it should not be able to raise it here on appeal. Further, this is beyond the scope of abandonment. Because there was evidence of beneficial use from the cattle grazing in these ditches, the tribe failed to show nonuse in the first instance. Therefore, their claim of abandonment must fail. And finally, the Alpine Decree only provides a water duty of 3.5 acre-feet for bottom land and 4.5 acre-feet for bench lands. This applies to the entire farm unit, which would include the dirt line ditches, which has historically been included as part of the water-righted acreage. The project is not micromanaged. Now, in regards to the abandonment issue and the attempted transfer inquiry, that arised in Alpine 5 and was designed to help the State Engineer's determination. It's just part of what goes into the analysis and determining the surrounding circumstances involving the intent to abandon. Now, applicant Workman, which was the applicant that you had a question about, Your Honor, purchased his water right in April 2nd, 1986. And he, from somebody who was not, this was not an intra-farm transfer. He purchased it from somebody outside of, from a separate property. And a few months later, he filed an application. These circumstances show that there was no intent to abandon. The five-year requirement that the tribe claims is not part of the inquiry for abandonment. It appears that the tribe has confused the forfeiture requirement with the abandonment requirement. Under forfeiture, there is a clear five-year statutory requirement. However, abandonment is based on all the surrounding circumstances. And when you consider the surrounding circumstances for applicant DeBraga and Harriman, and those are numbers 51608 and 51051, it's clear that they've met the test of Alpine 5 and 6. They've paid their taxes and assessment and beneficially used the water. There's also direct evidence that they specifically inquired about transferring the water and were told no by the United States, as well as evidence of filing transfer applications. Let me just go back to the DeBraga application. So we have a non-use period there of 40-some years, is that correct? Correct. Up to, what, 89? Yes. And then the inquiries and the board membership follows that? No. He was a board member. Well, first of all, in 1973, the predecessor attempted to transfer. So there's a clear attempt there. In 1989? In 1973. In 1989. Okay. He was a board member from 70, let me see. 74 to 1998. He so his predecessor attempted to transfer in 73. He was that was not accepted or processed. Therefore, he had knowledge. He was aware that the transfers were not being accepted. It would be futile for him to go back and continue to attempt transfers. In addition, Mr. DeBraga signed up for the lottery list. Under that, he would be able to get water from TCID, which would be transferred into his property where he was currently irrigating. Those transfers never went through. Also, the surrounding circumstances, considering the fact that he was on a TCID board and knew at all times there were no transfers, have to be considered because the attempt analysis is a totality of the circumstances. So taking all of this, oh, in addition, he specifically inquired. And that's in testimony in the supplemental record at page 38 through 39. So as a board member and as well as an individual water right owner, he made inquiries as to whether there were transfers and was told no by the BOR. Thank you. You have some time for rebuttal. Thank you. Quickly, first of all, with regard to this question about whether it's Alpine 6 or the requirement for the attempt to transfer is inconsistent with ORDICH or inconsistent with Nevada law, that issue was addressed by this court in Alpine 6, specifically 340F3 at page 917, where this court specifically addresses itself to that precise issue and whether Alpine 5's requirement was inconsistent with ORDICH or inconsistent with Nevada law. And this court said, thus we reject the individual applicant's argument, which incidentally was also made by the state engineer, that Alpine 5's minimum requirements are contrary to Nevada state law requirements, that all of the circumstances surrounding the abandonment must be considered in determining whether the water right has been abandoned. On the contrary, reading Alpine 5 and ORDICH together, we see that Alpine 5's requirements help guide the state engineer's consideration of all the relevant circumstances. And that portion of this court's decision, Judge Noonan, also addresses the rebuttable presumption issue. Second, with regard to the issue about the period of being coincident with non-use and whether that applies only to forfeiture or to forfeiture as well as abandonment, I'd refer this court to Alpine 5, 291F3 at page 1076, 1076, where in referring to the coincident requirement, this court refers to both forfeiture and abandonment. And, again, as I indicated during my opening argument, the six parcels that are cited in that paragraph, forfeiture and abandonment applies to all six of those parcels. With regard to Ms. Schroeder's argument, I would point out that it's very important for this court to focus carefully on the requirement for an attempted transfer. Again, this court held that a transfer was required under federal and state law under the 1902 Reclamation Act and under state law from the inception of the project. Now, a lot of times the state engineer refers to the applicant's effort to move water or to obtain a water right from TCID. Obtaining a new water right is not applying for a transfer. There's a distinction between obtaining a water right and an attempted transfer, and as Ms. Schroeder acknowledged, attempted transfers were not made prior to this period, prior to 1984 with the state engineer. The first application with the state engineer wasn't filed, I don't think, until 1984 after this court's decision and Alpine won. I'd like to ‑‑ I'm going to run out of time here, but I didn't have a chance in my opening argument to address either the dirt line ditch issue or the argument that Mr. Lazarus made with regard to the government's application, which I'd like to briefly do. Well, we have ‑‑ you can address the government's application. We have pretty good briefing, I think, on the dirt line ditch issue. Can I just say one thing with regard to the dirt line ditches? We have good briefing on that. Thank you.  Thank you. With regard to the government's position, the critical point here is that the state engineer did not address, and neither did the district court, the period from 1983 to 1989. The state engineer relied solely on the testimony of the previous ‑‑ of the owner, of the person who owned the property, I think, from 1948 until 1982 in determining that the tribe had not shown by clear and convincing evidence, notwithstanding the testimony of its expert, that there was nonuse up to 1982, when that individual who testified sold the property. But there was no finding about the seven subsequent years from 1983 to 1989. And, in fact, the government, in its brief to the district court, asked the district court to make that finding. And now the government is essentially asking this court to make that finding. Our position is that this application, in particular, cries out for reevaluation in light of this court's decision in Orr Ditch, in which it severely admonished the state engineer for not properly applying the clear and convincing evidentiary standard. The original decision on which the state engineer reaffirmed in ruling 5464 was issued before this court's decision in Orr Ditch, during the time when the state engineer was applying what this court considered was a too heavy an evidentiary burden on the tribe. So this instance, this is the one that involves the evidentiary issue, and this cries out for reconsideration and reevaluation in light of the proper evidentiary standard, in light of that flaw in the state engineer's and district court's decision. Thank you. Thank all counsel for argument in this continuing water cases. I guess the only thing I can tell you is that because the name of this case is different, it won't be Orr Ditch or Alpine. But you'll get a decision in due course. Thank you. We're now adjourned. All rise. This court for this session will stand adjourned. I'm just going to leave it there.
judges: Noonan, Fernandez, McKeown